IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                      Criminal No. 10-3383 WJ

JOSEPH C. KUPFER and
ELIZABETH D. KUPFER,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR NEW TRIAL**

THIS MATTER comes before the Court upon Defendants' Elizabeth Kupfer's Motion for New Trial, filed September 14, 2012 **(Doc. 353)**.[1] Having reviewed the parties' briefs and applicable law, I find that Defendant's motion is not well-taken and shall be denied.

## BACKGROUND

On August 16, 2012, Defendants were found guilty of income tax evasion and aiding and abetting, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2. The charges in the superseding indictment involving tax evasion against the Kupfers were severed from counts involving theft of Government property alleged against Joseph Kupfer and Armando Gutierrez. Doc. 131. A state court criminal case is also proceeding against Defendants Joseph Kupfer and Mr. Gutierrez, charging that Mr. Gutierrez's company, Armando Gutierrez & Associates ("AGA"), fraudulently contracted with the New Mexico Secretary of State to obtain federal Help America Vote Act ("HAVA") funds, and that Mr. Gutierrez passed some of these fraudulently obtained funds on to

---

[1] Defendant Joseph Kupfer joins in the motion. Doc. 354.

Mr. Kupfer through his business, Kupfer Consulting ("KC").[2]  For the federal trial, parties had stipulated that the Government would not introduce evidence of, or elicit testimony on, the source of the funds on which were based the tax evasion counts in order to avoid mini-trials on the issue.

In this motion, Defendants seek to vacate the jury's verdict based on comments made by one juror during deliberations concerning the state court charges.  Defendants contend that, as a result, the jury's deliberations were infected with extraneous prejudicial information and that a new trial is required because this information is not harmless. Defendants seek an evidentiary hearing on the matter.

## DISCUSSION

The Sixth Amendment's "right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). To be "indifferent," a juror must base her verdict only "upon the evidence developed at the trial." *Turner v. Louisiana*, 379 U.S. 466, 472 (1965).  The evidence developed against a defendant "shall come [only] from the witness stand in a public courtroom where there is a full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Id*. at 472-73; *see also Smith v. Phillips*, 455 U.S. 209, 225 ("Fairness and reliability are assured only if the verdict is based on calm, reasoned evaluation of the evidence presented at trial.").

The extraneous information at issue here is a statement made by a female juror to other jury members that AGA had been on the news and that it was a big scandal.[3]  According to the affidavit of juror Isabel Blea, one of the other unnamed female jurors also stated that she was

---

[2] *See* N.M. Dist. Court. Nos. D-202-CR-200904019, D-202-CR-200904020, D-202-CR-200904021, D-202-CR-200904022.
[3] By coincidence, there were hearings in the state court criminal case involving AGA at the same time the Kupfers' income tax evasion case was being tried in federal court.

aware that there were other indictments connected to the Kupfers and that it was "a big case." Defts' Ex. A. Defendants claim that this evidence introduced into the jury's deliberations was not subjected to the procedural safeguards of a fair trial, thereby requiring an evidentiary hearing to inquire into the effect of the extraneous information on the jury. See *U.S. v. Humphrey,* 208 F.3d 1190, 1198 (10th Cir. 2000), *abrogated on other grds by Arizona v. Gant,* 556 U.S. 332 (2009) (district court must "investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated.").

The Government also provides a sworn affidavit by Ms. Blea, attesting to largely the same statements as in Ms. Blea's affidavit provided by Defendants. In the affidavit presented by the Government, Ms. Blea states that she overheard the unnamed female juror tell the other jury members that there was a "big scandal" involving AGA; and that there would be "future indictments." Govt's Ex. 1. Ms. Blea then goes on to state that she reminded the jurors that, per the Court's instructions, no outside information was to be discussed and told the juror to stop, and this unnamed juror did so. *Id.* Ms. Blea stated that the information referenced by the unnamed female juror was not discussed in Ms. Blea's presence during deliberations, and the jury experienced no difficulties during the deliberations. *Id.* In the Government-provided Blea affidavit, Ms. Blea stated that the unnamed female juror "did not specifically mention the Kupfers." Govt's Ex. 1.

The Government also provides a "statement" of sorts by foreperson Jerry Moss, wherein Mr. Moss stated that a female juror said that she "recalled a snippet of information from the news about the defendants being involved in another case with the state government." Govt's Ex. 2. Defendants are quick to argue that Mr. Moss' "statement" is not properly admissible evidence, as it is not a sworn statement. This is true, and the Court will not consider this statement as evidence. However, although Defendants urge the Court not to consider Mr. Moss' statement,

they also rely on Mr. Moss' statement to argue that Ms. Blea's affidavit provided to the Government—in which she stated that the juror never specifically mentioned the Kupfers—contradicts Ms. Blea's statements in her other affidavit provided by Defendants. (Defts' Ex. A). Defendants cannot have it both ways, arguing against the Court's consideration of Mr. Moss' statement, and at the same time using it to bolster their own evidence. If Defendants wish to use Mr. Moss' statement, then the Court will note that it supports the Government's position as well. Mr. Moss stated that "[t]he jurors did not discuss the information. It was a minor comment." Govt's Ex. 2. The foreman instructed the jurors to disregard the extraneous information, and they did not discuss the information. *Id.* The jurors were not having difficulties prior to hearing the extraneous information. *Id.*[4]

Defendants are correct that "[o]nce it has been established that extraneous information entered into the deliberations, a presumption of prejudice arises." *See U.S. v. Hornung,* 848 F.2d 1040, 1045 (10th Cir. 1988). However, there is no presumption of prejudice here because there is no suggestion that the information mentioned by the juror ever entered into deliberations. The affidavits provided by the Government testify to the opposite, and the affidavit provided by Defendants do not support this notion.

The cases cited by Defendants are all distinguishable, either because the facts in those cases involved a more personal connection with the defendants (*see U.S. v. Tucker*, 137 F.3d 1016 (8th Cir. 1998) or because of the nature of the extraneous information. For example, in *U.S. v. Thompson,* 908 F.2d 648, 649 (10th Cir. 1990), the jurors were exposed to news that the defendant had withdrawn his guilty plea prior to trial. In *United States v. Davis*, 60 F.3d 1479,

---

[4] Mr. Moss also stated that the juror's comment "had no effect on our deliberations or the outcome." Govt's Ex. 2. However, as the Government notes, this statement cannot be considered under Fed.R.Evid.606(b), which prohibits a juror from testifying as to any matter or statement that may have influenced a juror's mental process during deliberations.

1483-84 (10th Cir. 1995), the jury watched a muted television screen showing a sketch of the defendant, where the bulletin accompanying the broadcast showed that defendant had pleaded to other crimes such as insurance fraud and sexual misconduct.  60 F.3d at 1482 n.2.  It was undisputed that this behavior "directly contravened the district court's admonitions to the jurors regarding their duty to avoid any out-of-court publicity relative to the trial."  *Id.*   In another case cited by defendants, *U.S. v. Hall,* 85 F.3d 367 (8th Cir. 1996), the Eighth Circuit remanded the case to the district court on the grounds that the trial court should have conducted an evidentiary hearing to determine the extent to which the jury was exposed to extraneous information, which concerned the defendants' connection to other crimes including murder.  The Eighth Circuit in *Hall* concluded that a hearing was necessary to determine how long the extraneous information was available to the jury, whether it was discussed and considered extensively by the jury and whether it was reasonably likely to affect the verdict, considering the strength of the prosecution's case and whether any prejudice was caused by the information.  These cases have no bearing on the situation in this case.  Viewing the evidence favorably to Defendants, the reference to the state court case was short and was curtailed upon the juror being told to stop.  It caused no prejudice to Defendants because it did not result in any difficulty in the deliberations and had no effect on the deliberations.

     Finally, contrary to Defendants' contention, the Government presented overwhelming evidence of Defendants' knowledge of their unreported income.  Defendants insist that the Government presented no evidence at trial as to Ms. Kupfer's intent in violating her legal tax obligations, focusing on evidence which supported Mrs. Kupfer's defense, such as the fact that she was not involved in preparing the tax organizers and that the money in question was not hidden, but was deposited directly into KC's bank accounts.  Doc. 405 at 4, n.3.  Doc. 405 at 3-4.  However, Defendants choose to ignore the overwhelming evidence that *was* presented regarding

5

Mrs. Kupfer's willful intent to violate a known legal duty. For example, the Government presented evidence that Mrs. Kupfer deposited the AGA checks (none of which was reported in the Kupfer's joint tax return) and that she wrote huge salary checks out of KC's operating account to her husband that far exceeded the company's reported gross income.[5] Based on this evidence, the jury was permitted to make inferences from this circumstantial evidence of Mrs. Kupfer's intent, and which the Court finds overwhelming as to both Defendants. Thus, the Government has sufficiently shown that the extraneous information referenced by the unknown female juror was harmless. *See U.S. v. Davis,* 60 F.3d 1479, 1485 (10th Cir. 1995) (The "most common means of demonstrating the harmlessness of an extraneous contact is to show the existence of overwhelming evidence of [the] defendant's guilt.").

## CONCLUSION

In sum, the Court finds and concludes that the extraneous information regarding the juror's comments about the state court indictment was not prejudicial to Defendants. The injection of such information into any of the deliberations was harmless also because the weight of evidence against both Defendants was overwhelming. Accordingly, there is no need for an evidentiary hearing.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for New Trial (**Docs. 353 & 354**) is hereby DENIED for reasons described in the above Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

---

[5] The Government's brief includes numerous other references to trial evidence that was circumstantial evidence of Mrs. Kupfer's willfulness or intent. The Court sees no need to create an additional list of trial exhibits which supported the Government's position on this issue.